UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **QUANDETAMASHUAN P. WILLIAMS-TIBBS** | **CIV. ACTION NO. 3:24-00834** |
| **VERSUS** | **JUDGE JERRY EDWARDS, JR.** |
| **FRANK BISIGNANO, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the court is Plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED** and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Quandetamashuan Williams-Tibbs (hereinafter, "Tibbs") filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on May 6, 2019. *See* Tr. 129, 144, 422-431).[1] Tibbs, who was 50 years old at the time of her most recent administrative hearing, alleged a disability onset date of November 15, 2016, because of epilepsy, right shoulder surgery, depression, asthma, frequent migraines, right knee arthritis, chronic constipation, and vertigo. *See* Tr. 106, 494. The state agency denied the claims initially on September 5, 2019, and upon reconsideration on February 27, 2020. (Tr.

---

[1] Tibbs filed two sets of prior applications in 2010 and 2016. *See* Tr. 107. The 2010 applications were denied at the administrative hearing level on March 26, 2012, with review denied by the Appeals Council. *Id*. The 2016 applications were denied at the initial stage of the administrative process on August 15, 2016, and, apparently, not further appealed. *Id*., 98-105.

106-159, 182-188, 194-199). Thereafter, Tibbs requested and received a June 22, 2021 hearing before an Administrative Law Judge ("ALJ"). *See* Tr. 163. However, in an August 9, 2021 written decision, the ALJ determined that Tibbs was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 160-171).

Tibbs petitioned the Appeals Council to review the unfavorable decision. On March 22, 2022, the Appeals Council granted the request for review, vacated the ALJ decision, and remanded the case for further proceedings because the ALJ failed to account for a limitation of functioning recognized by the consultative psychological examiner, G. Jon Haag, Psy.D. (Tr. 177-181).

Pursuant to the remand order, the same ALJ held another administrative hearing on June 15, 2023. (Tr. 37-97). However, in an October 3, 2023 written decision, the ALJ again determined that Tibbs was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 15-29).

Tibbs sought review of the adverse decision before the Appeals Council. On March 22, 2024, however, the Appeals Council denied Tibbs' request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On June 18, 2024, Tibbs filed the instant, pro se complaint for judicial review of the Commissioner's final decision. Following submission of the administrative transcript and supporting memoranda, the matter is now before the Court.

## Standard of Review

This Court's standard of review is (1) whether the final decision is supported by

substantial evidence, and (2) whether the Commissioner applied the proper legal standards to evaluate the evidence. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citation omitted). The Supreme Court has emphasized that

> [t]he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 587 U.S. 97, 102-103 (2019) (internal citations omitted). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Upon finding substantial evidence, the court may only review whether the Commissioner has applied proper legal standards and conducted the proceedings consistently with the statute and regulations. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983). In other words, where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed – *unless* the Commissioner applied an incorrect legal standard that materially influenced the decision. *See* 42 U.S.C. § 405; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable

3

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ."  42 U.S.C. § 423(d)(1)(A).   A disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  See 20 C.F.R. § 404.1520(a)(4)(ii).   Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.   See 42 U.S.C.§ 423(d)(2)(A).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.   See 20 C.F.R. §§ 404.1520, 416.920.   The steps are as follows,

(1)   An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)   An individual will be found not disabled if he or she does not have a "severe impairment," or a combination of impairments that is severe, and of the requisite duration.

(3)   An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1], and meets the duration requirement, will be considered disabled without the consideration of vocational factors.

Before proceeding to step four, the Commissioner assesses the individual's residual functional capacity, which is used at both step four and step five to evaluate the claim.

(4)   If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)   If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make

an adjustment to other work in the economy. If the individual can make such an adjustment, then he or she will be found not disabled. If the individual is unable to adjust to other work, then he or she will be found disabled.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.

When a finding of "disabled" or "not disabled" may be made at any step, a decision will be rendered at that point without proceeding to the remaining steps. 20 C.F.R. §§ 404.1520, 416.920; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). "The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted).

## The ALJ's Findings

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 21). At step two, he found that the claimant suffers severe impairments of seizures, headaches, degenerative disc disease of the cervical spine, residual effects of a right shoulder open decompression with rotator cuff repair, and depressive disorder. *Id.*[2] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 22-23).

### II. Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity

---

[2] The ALJ determined that the claimant's obesity and alleged arthritis of the right knee were not medically determinable impairments. *Id*.

5

("RFC") to perform a range of light work,[3] except she can only perform simple work, with no over-the-shoulder reaching, no exposure to hazards such as unprotected heights or dangerous machinery, and frequent handling and fingering (rather than constant). (Tr. 23-27).

### III. Steps Four and Five

With the assistance of a vocational expert ("VE"), the ALJ determined at step four of the sequential evaluation process that the claimant was unable to perform her past relevant work. (Tr. 27). Accordingly, he proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual, with at least a high school education. *Id*. Transferability of skills was not material to the decision. *Id*.

The ALJ next observed that, given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. §§ 404.1569, 416.969; Rule 202.21, Table 2, Appendix 2, Subpart P, Regulations No. 4; Tr. 27-28. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent, the additional limitations eroded the occupational base for work. *Id*. In response,

---

[3] Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

the VE identified the representative jobs of silver wrapper, *Dictionary of Occupational Titles* ("DOT") Code # 318.687-018; router, DOT # 222.587-038; document preparer, DOT # 249.587-018; call out operator, DOT # 237.367-014, and surveillance system monitor, DOT # 379.367-010, that were consistent with the ALJ's RFC and the claimant's vocational profile.   (Tr. 28, 91-92, 96).[4]

### Plaintiff's Brief

On February 18, 2025, Tibbs belatedly filed her appeal brief, stating that she disagreed with the Commissioner's decision.  (Pl. "Answer" [doc. # 12]).   Tibbs acknowledged that some of her health problems were her own fault, but that she was not looking for a handout.  *Id*.   She explained that she would stop taking her medication so she could work to take care of her children.  *Id*.   Tibbs noted that, at the ALJ hearing, the vocational expert opined that there would be no available work in response to at least one of the hypotheticals.  *Id*.   She further remarked that the consultative physician only asked her a few questions, but did not examine her physically.  *Id*.

Tibbs explained that her physical health did not deteriorate until after a July 15, 2015 work incident when she began to experience issues pertaining to her right shoulder, knee pain, neck pain, headaches, vision, vertigo, depression, degenerative disc disease in her back and shoulder, plus bowel disorder.  *Id*.   Furthermore, her cervical degenerative disc disease affected her ability to sit in the same position, to lift heavy weights, to twist her neck, and caused

---

[4] The VE responded that for the silver wrapper, router, document preparer, call out operator, and surveillance system monitor jobs there were 7,423, 25,136, 15,622, 1,983, and 2,787 positions available nationwide, respectively.  (Tr. 28, 91-92, 96).   This incidence of work constitutes a significant number (and range) of jobs in the "national economy."   42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

numbness, tingling, and fatigue. *Id*. However, she was now receiving the treatment that she needed, including therapy for her shoulder. *Id*. Moreover, because of vertigo, she was using a cane and walker for balance, as needed. *Id*. She also was unable to sit or stand for long periods of time. *Id*. When she used to work, she would hide out in the bathroom or in a friend's car because of the effects of her impairments. *Id*.

Tibbs also attached forty-three pages of medical records to her brief. (Pl. "Answer," Exhs. [doc. # 12-1]). The documents reflect physical therapy treatments for her right shoulder, plus an MRI and x-ray of her right shoulder, that span the period from May 2024 through October 2024. *Id*.

## Analysis

Pursuant to the Court's scheduling order, Tibbs was required to submit a brief that *inter alia*, set forth "**specific errors** committed at the administrative level which entitle plaintiff to relief." (June 26, 2024 Sched. Order [doc. # 4]). The order cautioned that, "[t]he court will consider only those errors **specifically identified** in the briefs. A general allegation that the ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke the appellate function of the federal court." *Id*.

Upon review, Tibbs has failed to raise any *specific* error with the ALJ's decision. Nonetheless, the keystone of most every social security disability decision is the ALJ's RFC determination. Generously construed, the Court may read Tibbs' brief as challenging the ALJ's RFC, as well as the ALJ's step-five determination that is premised upon the RFC. The Court will address each of the perceived arguments, in turn.

**I.     RFC**

The Court, like the ALJ, readily recognizes that Tibbs suffers from multiple impairments

that significantly impact her ability to work. Moreover, the ALJ carefully reviewed the record evidence and listened to Tibbs' testimony before reducing her RFC to a limited range of light work, which represents a significant limitation of functioning. (Tr. 23-27).

The Court further recognizes that, had the ALJ fully credited Tibbs' testimony, then an even more restricted RFC would have ensued, which could have compelled a finding of disability at step five of the sequential evaluation process. However, the ALJ did not fully credit Tibbs' statements regarding the effects of her impairments. *See* Tr. 26. Instead, the ALJ favored, to varying degrees, the opinions of the various medical experts (except for that of the non-examining agency psychologists). *See* Tr. 26-27.

For instance, at the request of the state agency, Tibbs underwent a consultative physical examination, on July 27, 2019, with Maria Khan, D.O. (Tr. 972-976). Tibbs told Khan that she was unable to work because of "epilepsy; right shoulder surgery; depression; asthma; frequent severe migraines; arthritis in the right knee; chronic constipation; vertigo." *Id*. In the last six months, Tibbs reported four seizures while awake and five while asleep. *Id*. Her seizure medication, Keppra, caused her to be extremely sleepy, and, as a result, she was not fully compliant with her dosage. *Id*. For the past month, however, Tibbs had started to take her medication as directed. *Id*. Following right shoulder surgery, she was in physical therapy and recently had been referred to a neurologist. *Id*.

Upon examination, Khan was unable to assess Tibbs' visual acuity because she refused to read the eye chart, stating that she could not see and that everything was blurry. *Id*. Her grip strength was intact, with no limitations with grasping or with gross or fine manipulation. *Id*. She also had 5/5 muscle strength in all extremities, with no muscle spasms. *Id*. Tibbs had a normal gait and was able to stand on tiptoes, heels, and tandem walk without difficulty. *Id*.

She also exhibited a full range of motion in every joint. *Id*.

Based upon the examination and the objective evidence, Dr. Khan opined that Tibbs should be able to walk or stand for a full workday. *Id*. She should be able to lift and carry objects approximately 15-20 pounds, without limitation. *Id*. Tibbs also should be able to sit, hold a conversation, respond appropriately to questions, and carry out and remember instructions without difficulty. *Id*. Khan recommended that Tibbs see a neurologist to optimize her seizure medications and an ophthalmologist for her blurry vision. *Id*.

On August 8, 2019, non-examining agency physician, Herbert Meites, M.D., reviewed the record, including Dr. Khan's findings, and opined that Tibbs had an RFC for light work reduced by the need to avoid concentrated exposure to hazardous machinery and heights. (Tr. 112-114). On February 17, 2020, non-examining agency physician, Gerald Dzurik, M.D., reviewed the record and completed a physical RFC in conformity with Dr. Meites' findings. (Tr. 139-141).

In his decision, the ALJ found Dr. Khan's findings mostly persuasive as to the ability to perform light work and to frequently handle and finger because they were consistent with other evidence in the file. (Tr. 26). He noted, however, that Dr. Khan did not account for the effect of seizures on Tibbs' ability to work. *Id*. Furthermore, her opinion regarding Tibbs' mental residual functional capacity was outside her area of expertise. *Id*.

The ALJ also found persuasive the findings of the non-examining agency physician(s), but limited Tibbs to simple work because of the effects of her mental impairment and added a restriction regarding no over-the-shoulder reaching because of her degenerative disc disease and shoulder surgery. *See* Tr. 23, 27.

In her brief, Tibbs contends that Dr. Khan only asked her a few questions but did not

10

examine her physically. At the hearing, however, Tibbs' attorney objected to Dr. Khan's opinion only as to her findings that she was able to lift between 15-20 pounds and for failing to include a limitation regarding her inability to lift her right arm overhead. *See* Tr. 40. Of course, the ALJ ultimately incorporated a restriction regarding no over-the-shoulder reaching in his RFC. *See* Tr. 23, 27. Moreover, even if Tibbs were unable to lift up to 20 pounds, some of the representative jobs identified by the VE for purposes of the step-five determination are performed at the sedentary level, which entails lifting no more than ten pounds. *See* 20 C.F.R. § 404.1567(a).

As for the effects of Tibbs' mental impairment, the state agency obtained a consultative mental examination administered by G. Jon Haag, Psy.D., on August 28, 2019. (Tr. 979-981). Dr. Haag noted that Tibbs was not currently being seen in therapy. *Id*. Her medical conditions included seizure disorder, muscle spasms, migraines, and vertigo. *Id*. Her last seizure was in June. *Id*. She lived with three of her seven children. *Id*. She was able to care for her personal hygiene, prepare basic meals, and make simple purchases. *Id*. A typical day included watching television. *Id*. Tibbs stated that she did not abuse alcohol or drugs but had been arrested twice for theft, with a trial pending on one of the charges. *Id*.

Tibbs' working memory and concentration showed moderate impairment. *Id*. She had a history of depression with mild symptoms. *Id*. Screening for working memory and concentration were impacted by an acute headache and likely did not represent her actual abilities absent the headache. *Id*. She was capable of understanding and following short and simple instructions. *Id*. She also was capable of initiating and sustaining basic social interactions. *Id*. Her persistence on tasks was negatively impacted to a moderate degree by the depression and chronic headaches. *Id*. She was likely to give up easily, having to be redirected

frequently.  *Id*.

In his decision, the ALJ found Dr. Haag's findings to be persuasive because they were consistent with the evidence.  (Tr. 26-27).  Consequently, the ALJ incorporated a limitation to simple work to account for Tibbs' moderate limitations in attending, concentrating, and persisting without redirection.  *Id*.[5]  In addition, he found that the opinions of the non-examining agency psychologists[6] were not persuasive because they were not consistent with Dr. Haag's examination findings.  *Id*.

At the hearing, Tibbs testified that, for the most part, if she takes her medication, as prescribed, then her seizures are controlled and she is "okay."  (Tr. 67).  The difficulty, of course, is that her seizure medication makes her drowsy.  *Id*.  However, a claimant's statements about her pain or other symptoms, alone, do not suffice to establish disability.  20 C.F.R. § 404.1529(a).[7]  "Once a medical impairment is established, the subjective complaints . . . must be considered along with the medical evidence in determining the individual's work capacity."  *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995) (citing, *inter alia*, 20 C.F.R. § 404.1529).

---

[5]  A limitation to simple work reasonably incorporates a moderate or even *marked* limitation in concentration, persistence, or pace.  *Reid v. Astrue*, Civil Action No. 10-0237, 2011 WL 4101302 (S.D. Miss. Aug. 15, 2011) *report and recommendation adopted,* 2011 WL 4101277 (S.D. Miss. Sept. 8, 2011); *Madrid v. Colvin*, Civil Action No. 12-800, 2013 WL 6641305 (N.D. Tex. Dec. 17, 2013); *Cornejo v. Colvin*, Civil Action No. 11-470, 2013 WL 2539710 (W.D. Tex. June 7, 2013).

[6]  On September 5, 2019, non-examining agency psychologist, Deanna Gallavan, Ph.D., reviewed the record and opined that Tibbs' mental impairment was not severe.  (Tr. 110-111).  On February 26, 2020, non-examining agency psychologist, Linda Upton, Ph.D., reviewed the record and affirmed the findings of Dr. Gallavan.  (Tr. 137-138).

[7]  In 2016-2017, the Commissioner issued a new social security ruling that dispensed with the term "credibility" because it was not used in the regulations.  *See* SOC. SEC. RULING 16-3P TITLES II & XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS, SSR 16-3P (Oct. 25, 2017).

Thus, when assessing disability, the ALJ is required to consider all symptoms, including pain, and the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence, together with other evidence.  20 C.F.R. § 404.1529(a).  The ALJ also must consider the "side effects of any medications" the claimant takes.  *Heck v. Colvin*, 674 Fed. App'x. 411, 417 (5th Cir. 2017) (citing 20 C.F.R. § 404.1529(c)(3)(iv)).  Finally, the ALJ will assess inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence.  20 C.F.R. § 404.1529(c)(4).  However, the ALJ need not follow formalistic rules in his assessment.  *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

The ALJ complied with the foregoing requirements in this case.  He dutifully recounted the hearing testimony provided by Tibbs.  Ultimately, however, he determined that Tibbs' statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record.  (Tr. 26).  In so doing, where the objective medical evidence and the opinions of the agency medical experts conflicted with Tibbs' own testimony and self-described limitations, the ALJ credited the former.  This assessment of Tibbs' subjective complaints and symptoms satisfied the requirements of 20 C.F.R. § 404.1529 and is supported by substantial evidence.  *See Knight v. Kijakazi*, 22-60539, 2023 WL 234769, at *2 (5th Cir. Jan. 18, 2023) ("It is the role of the ALJ, not this Court, to weigh conflicting evidence.") (citation omitted); *Giles v. Astrue*, 433 Fed. App'x. 241, 249 (5th Cir. 2011) (ALJ's appraisal of plaintiff's subjective complaints is supported by his discussion of medical records and opinions); *Herrera v. Comm'r of Soc. Sec.*, 406 Fed. App'x. 899, 905–06 (5th Cir. 2010) (ALJ complied with SSR 96-7p [now SSR 16-3p] by thorough consideration and discussion of the relevant medical evidence); *Undheim v. Barnhart*, 214 Fed. App'x. 448 (5th Cir.

2007) (opinion as a whole gave sufficient reasons and documentation for the ALJ's resolution of subjective evidence); *Cornett v. Astrue*, 261 Fed. App'x. 644 (5th Cir. 2008) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 278 Fed. App'x. 333 (5th Cir. 2008) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

Tibbs further urges the Court to consider her more recent medical records. It is manifest, however, that the role of the courts in reviewing social security appeals is wholly appellate and therefore, courts may *not* take up new evidence that was not before the Commissioner. *Ellis v. Bowen*, 820 F.2d 682, 684 (5th Cir. 1987); *see also Ferrari v. Astrue*, 435 Fed. App'x. 314, 315 n.4 (5th Cir. 2010) (courts cannot consider new evidence in the first instance). Instead, the only option is to remand the matter to the Commissioner for consideration of the new evidence. *Id*.

To justify remand, however, "the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding." *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987) (citing, *inter alia*, 28 U.S.C. § 405(g)). In other words, to justify remand, the evidence must be "new," and not merely cumulative of what is already in the record. *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citation omitted). The evidence also must be "material"; *i.e*., relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *Id.* Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *Id.*

Tibbs' new medical records do not satisfy the foregoing criteria. As stated above, the records date from approximately May 2024 through October 2024. However, there is no

14

indication that the treatment records reflect Tibbs' impairments during the relevant period, i.e., as of October 3, 2023, the date of the ALJ's decision, rather than a "later-acquired disability . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) (internal quotation marks omitted)).

Tibbs also has not suggested any explanation for her failure to incorporate the "new" evidence into the medical record. *Pierre*, 884 at 803 (good cause for remand is not met unless plaintiff provides proper explanation to excuse his failure to submit the evidence earlier). "[T]he mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Id*. (citation omitted).

In sum, Tibbs has neither established that the post-decision evidence is material, nor demonstrated good cause for her failure to incorporate the evidence into the administrative record. *Pierre,* 884 F.2d at 803. Accordingly, Tibbs is not entitled to remand for consideration of the new evidence.[8]

## II.     Step Five

Tibbs' remaining assignment of error (as perceived by the Court), represents but another permutation of her contention that the ALJ erred in his RFC assessment. She asserts, in effect, that the ALJ ignored the VE's testimony that was elicited in response to hypotheticals that included additional limitations of functioning in excess of the ALJ's RFC. However, the VE's testimony regarding the effects of additional or different limitations not adopted by the ALJ in his RFC prove immaterial, so long, as here, the ALJ's RFC is supported by substantial evidence. *See* discussion, *supra*; *Vaught v. Astrue*, 271 Fed. App'x. 452, 456 (5th Cir. 2008) (plaintiff's

---

[8] Of course, the new evidence may provide support for a new application for benefits.

argument amounts to a disagreement with the ALJ's RFC, but that determination was supported by substantial evidence). Furthermore, a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). In short, Tibbs' assignment of error lacks merit.

## Conclusion

The ALJ in this case was tasked with determining whether the claimant was disabled. In so doing, he considered the hearing testimony, the medical records, and expert opinion evidence. The evidence was not necessarily uniform, and according to Tibbs, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).

No matter how sympathetic the court may be to Tibbs' situation, she still is obliged to establish that she is disabled *within the meaning of* the Social Security Act. The Court emphasizes that it is not at liberty to "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, *even if the evidence weighs against the Commissioner's decision*." *Newton*, 209 F.3d at 452 (emphasis added). The limited two-pronged issue before the Court is whether the Commissioner's determination that Tibbs was not disabled under the Social Security Act is supported by substantial evidence and free of legal error. Upon review of the (limited) arguments presented, the Court is satisfied that the Commissioner's decision comports with the foregoing standard. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have

**fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 25th day of August, 2025.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE